**In re ESTATE OF CULLEN, Deceased.**

[Cite as *In re Estate of Cullen* (1997), 118 Ohio App.3d 256.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA96–07–140.

Decided Feb. 18, 1997.

*John A. Lloyd, Jr.*, and *Jeanette H. Rost*, for appellants.

*Taft, Stettinius & Hollister, R. Joseph Parker* and *Michael R. Rickman,* for appellee, Star Bank, N.A., Butler County.

*Schroeder, Maundrell, Barbiere & Powers* and *Michael E. Maundrell,* for Parrish, Beimford, Fryman, Smith & Marcum, L.P.A.

KOEHLER, Judge.

Plaintiffs-appellants, Bonnie C. Lewis, Jennifer E. Lewis, James Lewis, and Cameron Lewis Mitrione, appeal from a decision of the Butler County Court of

▮▮▮▮▮▮▮▮

Common Pleas, Probate Division, overruling their motion to vacate the court's prior orders approving two partial accounts, overruling their motion to disqualify trial counsel to defendant-appellee, Star Bank, and granting Star Bank's motion *in limine* regarding the admissibility of an audit letter. We reverse and remand.

The decedent, Jean M. Cullen, died on July 17, 1988. Appellant Bonnie C. Lewis is Cullen's only child. Appellants James Lewis, Jennifer Lewis, and Cameron Lewis Mitrione are Bonnie Lewis's children and Cullen's grandchildren.

Cullen established an *inter vivos* trust ("Cullen trust") prior to her death, which was already funded with assets totaling approximately $1.9 million when Cullen died. At Cullen's death, one-half of the trust was to benefit Bonnie Lewis and one-sixth was to benefit each of the three grandchildren. In Cullen's will, the Cullen trust was the residuary beneficiary of the estate. Star Bank served both as trustee of the Cullen trust and as executor of the Cullen estate.[1]

Under the Cullen will, Bonnie Lewis was to receive "(a) all of my personal effects, together with such furniture, furnishings and household equipment located in my residence as may belong to me at the time of my death."

The Cullen residence and its contents were appraised as part of the estate valuation. Located and displayed in the house were sixteen original paintings. The paintings were appraised by the Robinson Gallery for a total of $391,000. The estate inventory filed with the probate court initially valued the estate at $538,517.55.

Star Bank as executor determined that the paintings decorating the Cullen residence were investments and not personal property and should pass under the will's residuary clause. Although the Cullen trust authorized the trustee "to advance funds for the payment of estate taxes," six of the paintings were consigned by Star Bank to a New York auction house for sale, with the apparent intent of raising cash to pay estate taxes and expenses. One painting, "A Spring Morning" by Childe Hassam, sold at auction for $2.1 million. The total realized from the sale of all six paintings was $2.2 million.

Star Bank's first partial account was filed on May 9, 1989. Notice of the hearing on the account was made by publication pursuant to the version of R.C. 2109.32 in effect at that time.[2] Appellants did not receive actual notice, which

---

1. Parrish, Beimford, Fryman, Smith and Marcum, L.P.A., ("Parrish"), a defendant below, served as counsel to Star Bank as executor.

2. R.C. 2109.32 provided in part:

"Within one month after the account is filed, the court shall cause notice of the filing of the account and the time and place of the hearing thereon to be published once in some newspaper of general circulation in the county."

was at the fiduciary's discretion under R.C. 2109.33, and were not aware of the hearing, which was held on June 26, 1989.

The account showed receipt by the Cullen estate of the $2.2 million from the sale of the six paintings, plus the remaining ten paintings appraised for a total of $35,000. The account also showed approximately $2.1 million paid out of estate funds for federal and state estate taxes and other lesser disbursements.

When Star Bank subsequently retained attorney Donald C. Hess ("Hess") on another estate matter, Hess also advised Star Bank that the paintings were personal property and should have passed to Bonnie Lewis under the Cullen will. Star Bank ultimately resigned as fiduciary effective August 15, 1991, and First National Bank of Southwest Ohio became successor fiduciary.

In December 1991, Star Bank filed its second and final account. As with the first account, notice was made by publication, and appellants were unaware of the hearing. Although the first account had shown that no funds had been disbursed from the estate to the Cullen trust and that the estate taxes and expenses had been paid out of estate funds, this second account showed that approximately $1.1 million had been removed from the Cullen trust and transferred to the Cullen estate.

This transfer of funds from the trust, combined with the trust disbursements already made to the grandchildren in 1988 and 1989, depleted the Cullen trust, which was collapsed by Star Bank. Meanwhile, appellants were informed by Star Bank that the appropriate tax schedule for a generation-skipping tax had not been filed,[3] leaving the trust subject to an additional $66,000 in taxes.

Appellants filed suit against Star Bank and Parrish, seeking damages for their handling of the Cullen estate and the Cullen trust. Although the suit was filed prior to Star Bank's second account, Star Bank did not advise the probate court of the pending suit.

On July 21, 1992, appellants filed a motion to vacate the orders approving the first and second partial accounts for fraud and other good cause. Appellants later filed a motion to disqualify Star Bank's trial counsel because appellants planned to call Hess, a member of the same firm, as a witness. Star Bank filed a motion *in limine* seeking· to exclude an audit letter sent by Parrish to Arthur Anderson & Company during Arthur Anderson's audit of Star Bank.

The probate court concluded that appellants' motion to vacate was not timely filed under R.C. 2109.35(C) [4] with respect to the first account. The court found

---

3. The estate tax return was prepared by Parrish.

4. R.C. 2109.35 provided as follows:

that appellants' motion was timely as to the second account, but that appellants failed to show fraud or good cause as a basis to vacate the order approving that account. Due to the pending suit, however, the court did vacate the order settling the second account in part, deleting language treating the account as Star Bank's final account and discharging Star Bank as fiduciary, and changing the characterization of the account to a partial account so that Star Bank was not discharged. Otherwise, the second account remained approved.

Further, the court found with respect to the motion to disqualify that attorney Hess's testimony would not substantially conflict with that of Star Bank. As to the motion *in limine,* the court concluded that the audit letter was a privileged communication under R.C. 2317.02(A) and therefore inadmissible as evidence.

From the probate court's treatment of the various motions, appellants raise the following assignments of error:

Assignment of Error No. 1:

"The probate court erred in denying appellants' amended motion to vacate the order settling accounts for fraud and for other good cause."

Assignment of Error No. 2:

"The probate court erred by denying appellants' motion to disqualify counsel from further representation of appellee Star Bank."

Assignment of Error No. 3:

"The probate court erred in granting Star Bank's motion for protective order and motion in limine to exclude."

We will address appellants' second and third assignments of error first. We conclude that they must be dismissed because the orders appealed from are not final appealable orders.

Section 3(B)(2), Article IV of the Ohio Constitution and R.C. 2505.02 grant the court of appeals jurisdiction to hear appeals of only final appealable orders. R.C. 2505.02 defines such an order as one that "affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary

---

"The order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only as follows:

" * * *

"(C) Such order may be vacated for good cause shown * * * upon motion of any person affected thereby who was a party to the proceeding * * * solely by reason of his having been served by publication * * * if such motion is filed within one year after such person acquires knowledge of such proceeding and in any event within three years after such order is made."

application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial."

■ A motion to disqualify counsel in a civil proceeding has been characterized as a request for ancillary relief, denial of which is not a final appealable order. See *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 448–449, 16 O.O.3d 461, 463–464, 406 N.E.2d 532, 535–534.

■ A motion *in limine*, if granted, is an interlocutory ruling by the trial court reflecting its anticipatory treatment of an evidentiary issue. *Collins v. Storer Communications, Inc.* (1989), 65 Ohio App.3d 443, 446, 584 N.E.2d 766, 767–768. Accordingly, the party who has been temporarily restricted from introducing evidence must seek to introduce it at trial in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record. *Id.*, citing *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142, paragraph two of the syllabus.

Based on the above, appellant's second and third assignments of error are overruled.

In their first assignment of error, appellants argue that the probate court erred in denying their motion to vacate because notice by publication of the hearings on the first and second accounts was constitutionally deficient, denying appellants due process.

■ Appellants acquired knowledge of the account hearings in June 1992. Appellants' motion to vacate was filed on July 21, 1992. This was within one year of appellants' knowledge and within three years of the order approving the second account, which was filed January 21, 1992. Appellants' motion is therefore timely under R.C. 2109.35(C) as to the second account, rendering appellants without standing to challenge the notice provisions of R.C. 2109.32 as they relate to that account. See *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 174–175, 512 N.E.2d 971, 976–977 (one who seeks to set aside statute as unconstitutional must show that he is within the class of those to whom the act was unconstitutionally applied and that such application injured him). See, also, *Schreiner v. Karson* (1977), 52 Ohio App.2d 219, 224, 6 O.O.3d 237, 239–240, 369 N.E.2d 800, 803–804 (failure of notice does not prejudicially deny plaintiff due process where plaintiff has challenged the propriety of the order through motions subsequent to the dismissal).

The probate court found that appellants did not show fraud as to the first account and had been made parties to the proceeding due to notice by publication. The court therefore concluded that the order approving the first account could not be vacated under R.C. 2109.35(A) or (B). The court further found that the order could not be vacated under R.C. 2109.35(C) because appellants filed the

motion more than three years after the order approving the first account was entered on May 9, 1989.

■ The notice published in the Journal News listed the Cullen estate as one on which an account hearing would be held. The notice listed the place and date of the hearing. We conclude that the notice strictly complied with the requirements of the version of R.C. 2109.32 then in effect.[5] See *Masonic Temple Assn. v. Emmons* (1934), 49 Ohio App. 87, 1 O.O. 286, 195 N.E. 259 ("[a]s to accounts, a published notice of the filing of an account in a given estate and the date of the hearing are all that is required").

We find, however, that the notice-by-publication provision of former R.C. 2109.32 fails due-process analysis. In *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865, 875, addressing a trust account settlement, the United States Supreme Court stated:

"As to known present beneficiaries of a known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach the interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."

The court recognized that "it would be idle to pretend that publication alone * * * is a reliable means of acquainting interested parties of the fact that their rights are before the courts. * * * Chance alone brings to the attention of even a local resident an advertisement * * * inserted in the back pages of a newspaper." *Mullane*, 339 U.S. at 315, 70 S.Ct. at 658, 94 L.Ed. at 874.

The Ohio Supreme Court addressed notice by publication in a probate proceeding in *Palazzi*, 32 Ohio St.3d at 173–175, 512 N.E.2d at 975. Although *Palazzi* was decided on the standing question as discussed previously, the court commented at length in dicta on the question of notice by publication and due process in a probate proceeding. The court observed that subsequent to *Mullane*, notice by publication in probate proceedings had been successfully challenged in a number of state courts and went on to say:

"[T]he constitutionality of notice by publication to resident and nonresident heirs whose whereabouts are known to the applicant is questionable under the

---

5. The statute has since been amended to delete any reference to notice by publication. R.C. 2109.35 now requires that for a person affected by an order settling an account to be made a party to the proceeding, that person must have received notice in accordance with R.C. 2109.33. R.C. 2109.33 specifies that notice be served "upon any person who is interested in the estate or trust."

doctrines announced in *Mullane* and its progeny. The continued adherence to 'constructive notice' where notice by mail provides an 'efficient and inexpensive means of communication' invites constitutional scrutiny." *Id.* at 175, 512 N.E.2d at 977.

We find, based on the foregoing analysis, that although the probate court complied with the notice requirement of R.C. 2109.32, the statute's notice-by-publication provision was insufficient to satisfy the due process standard of *Mullane* that notice be "reasonably calculated to reach the interested parties." *Mullane*, 339 U.S. at 318, 70 S.Ct. at 652, 94 L.Ed. at 875; *Palazzi*, 32 Ohio St.3d at 173–175, 512 N.E.2d at 975–977. The order approving the first account is therefore void *ab initio* due to failure of notice. See *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus (judgment rendered by a court lacking subject matter jurisdiction is void *ab initio*).

As to the second account, having concluded that appellants are without standing to challenge the constitutionality of the statutory notice provision, we proceed to our review of the probate court's denial of appellants' motion to vacate the order approving the second account. A trial court's decision on a motion to vacate is a matter of discretion, and we will reverse only if we find an abuse of that discretion. *Huntington Natl. Bank v. Heritage Invest. Group* (1983), 12 Ohio App.3d 113, 114, 12 OBR 420, 421–422, 467 N.E.2d 564, 566–567.

Under R.C. 2109.35(C), the probate court's order approving the second partial count may be vacated upon a showing of good cause. Good cause to vacate a settlement order exists when there is a mistake or error by the probate court or when there is a mistake in the proceeding of a court of record in matters of law or fact. *Mathe v. Fowler* (1983), 13 Ohio App.3d 273, 274, 13 OBR 337, 338–339, 469 N.E.2d 89, 91.

In this case, the second account was filed as Star Bank's final account without notifying the probate court that a tort action had been filed against Star Bank in relation to its handling of the estate. In addition, although the first account showed that no funds had been disbursed to the Cullen trust from the estate and that estate taxes and expenses had been paid out of estate funds, the second account showed that $1.1 million was taken out of the Cullen trust and transferred to the Cullen estate, effectively terminating appellants' interest in the trust by its depletion.

On these facts, we find that appellants' motion to vacate the order approving the second account had merit, inasmuch as the probate court was not advised of the pending suit and the account demonstrated that funds which facially should have remained in the trust were transferred to the estate. The probate court's order overruling appellants' motion to vacate was therefore an abuse of discretion

in that appellants demonstrated the existence of good cause as a basis to set aside the order of approval.   See R.C. 2109.35(C).

Appellants' first assignment of error is sustained.   The decision of the probate court overruling appellants' motion to vacate the orders approving the first and second accounts is reversed.   The cause is remanded for appellants to file their exceptions to the first and second partial accounts.

*Judgment reversed*
*and cause remanded.*

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.