[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION.
In this appeal, which is now before us for reconsideration, appellant Joseph Woltering, the trustee of a testamentary trust, challenges the judgment of the Probate Division of the Hamilton County Court of Common Pleas sustaining exceptions to accounts filed by him in his capacity as trustee and setting his trustee fees.
 FACTS AND PROCEEDINGS
A.J. Woltering was the sole shareholder and chief executive officer of Crown Industries, Inc., a closely held corporation. In 1970, he died leaving a wife and two sons, Joseph, the appellant herein, and Thomas, who was seriously disabled as a result of injuries sustained in an automobile accident in the 1950s. A.J.'s will provided for the establishment of a trust that would benefit Thomas during his lifetime, and that, upon his death, would pass to his daughters, Anne, Barbara, and Martha (the remainder beneficiaries). The will also provided that the trust was to be funded with 100 shares of Crown Industries stock and that Joseph was to serve as trustee. Finally, the will empowered fiduciaries of the trust (1) to change investments and securities without liability for loss, provided unreasonable risks were avoided, (2) to make such decisions without "court order," and (3) to deal with the trust "as though they were strangers thereto."
Pursuant to his father's will, Joseph did in fact serve as trustee of his brother's trust for over twenty years, until Thomas's death in 1996. During this time he filed seven current accounts detailing the trust holdings and financial activities. All of these accounts were approved by the probate court. Shortly after Thomas's death, Joseph filed the eighth current account. The remainder beneficiaries were served with notice of the hearing on this account. Prior to the hearing, they filed exceptions to this account as well as prior accounts filed by Joseph in his capacity as trustee. Specifically, the remainder beneficiaries took exception to a 1991 transaction, reported in the sixth and seventh accounts, wherein Crown Industries had redeemed all 100 shares of stock held by the trust for $39,000 in cash and $221,000 in secured promissory notes, or $2,600 per share.[1] They alleged that Joseph, who by then was the chief executive officer and majority shareholder[2] of Crown Industries, had breached his fiduciary duty as trustee by (1) failing to obtain court approval for the transaction, which they contended constituted self-dealing, and (2) basing the purchase price of the stock on an inaccurate and stale appraisal. Joseph subsequently filed an application for trustee fees in the amount of $23,264.62 for the period from September 1974 through January 1996, which the remainder beneficiaries also challenged.
On three separate days, the probate court held hearings on the remainder beneficiaries' exceptions to Joseph's accounts and on Joseph's application for trustee fees. The majority of the evidence presented related to the issue of what the proper fair market value of the Crown Industries stock was. In its joint opinion and entry, the trial court found in favor of the remainder beneficiaries on their exceptions to the accounts, determining that Joseph's involvement in the transaction constituted self-dealing and that he had erred in failing to seek court approval prior to engaging in the transaction. The trial court also determined that the per-share purchase price of the stock, as paid to the trust, was undervalued by $1,629. Based on these findings, the probate court specifically ordered that "Crown Industries must repay to the Trust the difference of $1,629.00 for each of the 100 shares it redeemed in December of 1990." With regard to Joseph's application for trustee fees, the probate court determined that Joseph was barred by the doctrine of laches from receiving the full amount of the fees he had requested. Therefore, the probate court awarded Joseph $9,205.11 in fees for the period from January 1, 1990, to December 31, 1995.
Thereafter, Joseph timely appealed the probate court's order to this court, bringing five assignments of error. Shortly thereafter, the remainder beneficiaries filed with this court a motion for leave to permit the probate court to correct a clerical mistake in its judgment entry. This court granted the motion and remanded the matter to the probate court. There, pursuant to Civ.R. 60(A), the court substituted the words "Joseph A. Woltering" for "Crown Industries" in its judgment entry. The probate court's revised entry was then made part of this court's record on appeal and the entire matter was submitted for review.
On February 12, 1999, this court released a decision affirming the portion of the trial court's judgment relating to the probate court's award of trustee fees, which Joseph had addressed in his fourth assignment. We dismissed the remainder of the appeal, however, based on the conclusion that Joseph lacked standing to appeal the portion of the probate court's judgment relating to the exceptions to his accounts, because the probate court had ordered Crown Industries, not him individually, to pay damages to the trust. Thereafter, Joseph filed a motion for reconsideration correctly noting that, in dismissing that portion of his appeal, we had inadvertently neglected to take note of the probate court's revised judgment entry, which corrected the very error upon which this court had based its dismissal. Accordingly, Joseph's motion for reconsideration was granted and the matter has again been submitted for review.
We now address the merits of Joseph's assignments of error, with the exception of his fourth assignment, which we summarily overrule for the reasons given in our initial decision.
 ASSIGNMENTS OF ERROR
In his first assignment of error, Joseph asserts that the probate court erred in sustaining the remainder beneficiaries' exceptions to his prior accounts. In support of this assertion, he contends that the court's orders approving and settling the sixth and seventh accounts, wherein the transaction complained of was reported, had the effect of final judgments and could only be vacated in accordance with the provisions of R.C. 2109.35.
The current version of R.C. 2109.35, which was in effect at the time the remainder beneficiaries filed their exceptions, provides in pertinent part that:
 The order of probate court upon settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only as follows:
* * *
 (B) The order may be vacated for good cause shown, other than fraud, upon motion of any person affected by the order who was not a party to the proceeding in which the order was made and who had no knowledge of the proceeding in time to appear in it[.] * * * A person affected by an order settling an account shall be deemed to have been a party to the proceeding in which the order was made if that person was served with notice of the hearing on the account in accordance with section 2109.33 of the Revised Code * * *.
 Joseph contends that the remainder beneficiaries failed to satisfy the statutory requirements in two different respects. First, he contends that they failed to file a motion to vacate the orders approving and settling the sixth and seventh accounts, and instead only filed exceptions to those accounts. Based on this failure, he reasons, the probate court should have invoked the doctrine of res judicata and terminated the proceedings.
We agree that R.C. 2109.35 contemplates that a party seeking to vacate an account that has previously been approved and settled by the probate court file a motion indicating that desire. Although they are not specifically captioned as a "motion to vacate," we believe that the "exceptions to current and prior accounts" filed by the remainder beneficiaries were sufficient to satisfy the requirement set forth in R.C. 2109.35. This filing provided the probate court and Joseph with notice that the remainder beneficiaries challenged the propriety of Joseph's actions with respect to the stock redemption, which had been reported in prior accountings. It also provided notice that they sought to have the probate court compel Joseph to correct the transaction by restoring assets to the trust. In asking the probate court to revisit its earlier orders, which had acquired the effect of judgments, the remainder beneficiaries implicitly sought to have the probate court vacate those orders. Without doing so, the probate court would have been unable to sustain the remainder beneficiaries' exceptions and to grant them the relief they sought. Accordingly, we reject Joseph's first contention.
Next, Joseph contends that, contrary to the determination of the probate court, the remainder beneficiaries failed to demonstrate that they had no knowledge of the sixth and seventh account proceedings in time to appear in them. We disagree.
Our review of the record reveals that the probate court had before it competent, credible evidence to support its finding that the remainder beneficiaries had no knowledge of the prior account proceedings. Among this evidence were (1) the remainder beneficiaries' own declarations that they were unaware of the proceedings; (2) Joseph's testimony that he "absolutely [did] not" contact them; and (3) the indication in the probate court's docket and journal that the remainder beneficiaries had not been personally served with notice of the proceedings and that the only form of notice utilized was notice by publication in a newspaper.[3] Accordingly, we reject Joseph's second contention and overrule his first assignment of error.
In his second assignment of error, Joseph asserts that the probate court erred in finding that he committed a breach of fiduciary duty by self-dealing with the trust in violation of R.C.2109.44. Specifically, Joseph takes issue with the probate court's determination that he dealt with the trust in his individual capacity.
The version of R.C. 2109.44 in effect at the time the stock redemption was effectuated provided in pertinent part:
 Fiduciaries shall not buy from or sell to themselves nor shall they in their individual capacities have any dealings with the estate, except as expressly authorized by the instrument creating the trust and then only with the approval of the probate court in each instance * * *.
 Joseph contends that he did not engage in self-dealing because he did not "buy from himself" and did not deal with the trust in his "individual capacity." He notes that it was Crown Industries, and not him personally, that redeemed the stock. Accordingly, he argues that the trial court improperly disregarded Crown Industries' separate corporate entity in determining that he, individually, engaged in self-dealing by redeeming the stock held by the trust.
A trustee's duty to refrain from engaging in self-dealing pre-dates any statutory formulation of such prohibition. Indeed, R.C. 2109.44 is an expression of the common-law prohibition against a fiduciary's buying of property to which his fiduciary duty extends.[4] Although not specifically stated in R.C.2109.44, it is generally recognized that a fiduciary may engage in self-dealing not only by directly purchasing such property, but also by facilitating the purchase of such property by another person or entity closely aligned with the fiduciary such that the fiduciary's personal interest in the purchase is substantial enough that it might affect his judgment in making the sale.[5]
Here, the trial court determined that Joseph's sale of stock held by the trust to a company of which he was both the CEO and the majority shareholder involved an inextricable conflict of interest. As the majority shareholder of Crown Industries, Joseph stood to benefit individually by the stock redemption. Indeed, he became the sole shareholder following the stock sale. This personal stake in the transaction was in conflict with his duty to administer the trust solely for the benefit of the trust beneficiaries. Given these circumstances, we are unable to conclude that the probate court erred in concluding that Joseph's actions amounted to self-dealing and that he was required to seek court approval prior to engaging in the transaction.[6]
Accordingly, we overrule his second assignment of error.
In this third assignment of error, Joseph asserts that the probate court erred in finding that the per-share value of the Crown Industries stock was $4,229, and not $2,600, as David McCoy, Joseph's business appraiser, had concluded. We disagree. Assigning value to the stock of a closely held corporation such as Crown Industries is a difficult endeavor for a court. This court, reviewing the probate court's determination of this issue, may not substitute its judgment for that of the probate court. Rather, we must affirm the probate court's judgment if it is supported by competent, credible evidence.[7]
During the three days of hearings conducted on this matter, the probate court was presented with extensive testimonial and documentary evidence on the issue of the proper valuation for the Crown Industries stock. This evidence established that McCoy was engaged by Joseph to conduct an independent appraisal of the fair market value of the trust's 100-share block of Crown Industries stock. In July 1989, he rendered his opinion that, as of December 31, 1998, the fair market value of the shares held by the trust was $2,600 per share. In reaching this conclusion, McCoy applied a 30-percent minority discount to the share value and reduced the value of the company's accounts receivable by 20 percent. He also reduced the estimated value of the company based on the company's intent to spend $2 million for capital improvements over the next four years.
Stephen Thompson, an accountant and an attorney, testified on behalf of the remainder beneficiaries as an expert. He took issue with McCoy's appraisal in several key respects. Thompson's most basic argument regarding the deficiency of the appraisal was that it was stale; the appraisal set the fair market value of the stock as of December 1988, but the stock purchase agreement and the stock redemption were not finalized until 1990 and 1991, respectively. Thompson also argued that it was necessary to adjust the valuation of the company upwards based on the fact that only $280,000, not $2 million, was actually spend in capital improvements. He also argued that the 20-percent reduction in value for accounts receivable was inappropriate based on the company's history. Finally, Thompson argued that the 30-percent minority discount applied to the stock's value was also inappropriate. Thereafter, the probate court rendered its opinion, concluding that the per-share price paid by Crown Industries to the trust was below the true fair market value and that a more appropriate price per share was $4,229. In doing so, the probate court adopted Thompson's arguments regarding the capital improvements and accounts receivable, but rejected his argument regarding the application of the minority discount.
Clearly, the probate court was not bound to fully accept the valuation of either Joseph's or the remainder beneficiaries' expert. Rather, it was within the probate court's discretion to weigh the evidence presented on the issue of valuation and to resolve the conflicts therein. Because the record contains competent, credible evidence to support the trial court's determination of the value of the stock, we overrule Joseph's third assignment of error.
In his fifth and final assignment of error, Joseph asserts that the trial court erred in excluding a portion of his expert witness's testimony.
At trial, on direct examination of McCoy, Joseph's counsel inquired if he had reviewed the issue of whether the value of the 100-share block of Crown Industries stock as of December 1990 was any greater than it was as of December 1998. The remainder beneficiaries' counsel objected, noting that, in her earlier deposition of him, McCoy had specifically informed her that he had not performed such a review, that his expert opinion at trial would revolve around his 1988 appraisal only, and that he was not going to update his opinion to December 1990. Joseph's counsel, however, noted that McCoy had also stated in his deposition that, despite not having updated his opinion on a "formal basis," he had done so "informally," and that, based on this, he had informally concluded that the value of the stock would probably be lower. The remainder beneficiaries' counsel again objected to the admissibility of McCoy's potential testimony on the issue. This time, counsel contended that, as an expert, McCoy should not be permitted to testify as to an informal opinion on the stock's 1990 value when he had clearly stated in response to her deposition questions that he had not updated his opinion. The probate court then sustained counsel's objection and disallowed McCoy's testimony on that issue. Joseph's counsel, however, was permitted to proffer McCoy's statement that he believed the value of the stock would "certainly [be] no higher and probably less."
Even if we were to conclude that the probate court's exclusion of McCoy's testimony regarding his opinion on the value of the stock in 1990 was in error, such error was harmless, as this testimony was merely cumulative of other evidence properly before the court. Accordingly, we overrule the fifth assignment of error.
 CONCLUSION
For the reasons stated above, we affirm the trial court's judgment.
Judgment affirmed.
Sundermann, P.J., Gorman and Painter, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] Other issues initially raised by the remainder beneficiaries' exceptions were resolved below.
[2] Joseph, individually, owned 361 of the company's 461 outstanding shares. The trust owned the other 100 shares.
[3] At the time the proceedings for the sixth and seventh accounts were pending, R.C. 2109.35 provided that a person affected by an order settling an account could be made a party to the proceeding in which the order was made solely by reason of having been served by publication in a newspaper. This procedure, however, has subsequently been denounced as constitutionally deficient. In re Estate of Cullen (1997), 118 Ohio App.3d 256,692 N.E.2d 650, citing Mullane v. Central Hanover Bank Trust Co.
(1950), 339 U.S. 306, 70 S.Ct. 652; see, also, Palazzi v. Estateof Gardner (1987), 32 Ohio St.3d 169, 512 N.E.2d 971. Given this, we are persuaded that notice by publication in a newspaper is also deficient as a means of establishing that a person had actual knowledge of the proceedings where, as here, the person or persons in question assert that they were unaware of the proceedings. We note that the legislature amended R.C. 2109.35 in 1994 by deleting any reference to notice by publication. The section now requires that, for a person affected by an order settling an account to be made a party to the proceeding, that person must have received notice in accordance with R.C. 2109.33. R.C. 2109.33, in turn, provides that the notice must be served upon the person.
[4] See Magee v. Troutwine (1957), 166 Ohio St. 466,143 N.E.2d 581; Walters v. Wannemacher (1964), 6 Ohio App.2d 226,217 N.E.2d 695.
[5] See, generally, comment to Restatement of Law 3d, Trusts (1990), Section 170.
[6] In so determining, we are cognizant that the trust instrument authorized Joseph to sell trust property without obtaining court approval and to deal with the trust as if he was a "stranger thereto."
[7] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.